All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the Second District is now open. Pursuant to adjournment, the Honorable Catherine T. Zianoff is idle. Thank you. Please be seated. Your Honor, this is the first case of the morning, called 211-0346, People in St. Illinois v. George R. Jones. On behalf of the Appalachians, Mr. Christopher McCoy. On behalf of the Appalachians, Mr. Marshall Stevens. Good morning, Counsel. Mr. McCoy. May it please the Court, Counsel. This case involves two issues. The first concerns an amendment to the indictment and the second, ineffective assistance of counsel. Today I will be addressing primarily the first argument. On the morning of trial, the prosecution amended the indictment by changing the victim of the aggravated battery from Officer Acott to Officer Gutierrez. This issue really boils down to the single question, was this a formal amendment or was it a substantive amendment? An amendment is substantive if it one, materially alters the charge and two, it cannot be determined that the grand jury intended this alteration. Do you think this materially altered the charge and if so, how? It materially altered the charge because it changed an essential element of the charge, namely the victim. A victim of an aggravated battery is essential because without a victim, there can be no battery. But in People v. Jones, the victim was changed also and there the Court held that the amendment was formal and not substantive. Yes, and Jones was decided at the second stage of the analysis, determining if the grand jury intended the change. Jones did hold that was an armed robbery case and Jones did hold that the identity of the victim was an essential element in that charge, but it was formal because based on the evidence, it was clear that the grand jury meant to indict the father, but the son's name had somehow inadvertently been put into the indictment. So that case really comes down to what the grand jury intended, which is not the case here. That has some superficial appeal. If you know that you have a more recent case, People v. Ross, which held that changing the victim of a crime, it's a formal amendment. But let's assume, for the sake of the argument, you're correct, but as I was reading the record in the briefs, didn't the grand jury, weren't they aware of Gutierrez was allegedly the victim? He was mentioned in the grand jury transcript, testimony. So my question then becomes, where is the surprise and where is the prejudice? It isn't like all of a sudden somebody is mentioned for the first time in the day of trial. You're correct, Your Honor, and Gutierrez is mentioned with the grand jury and in the grand jury proceedings, but Officer Acott was also mentioned, and there was a touching of Officer Acott before the grand jury. So the grand jurors may have believed that they were truly indicting Mr. Jones for what he did to Officer Acott, not to Officer Gutierrez. Where is the, you know, doesn't the fact that the trial court offered a continuance and trial counsel turned down that offer cut against any argument that there was any surprise or prejudice? I mean, if the defense attorney is, on the day of trial, for the first time he's given notice that there's going to be an amendment, and then he says, no, I don't need a continuance, doesn't that cut against any argument that there was any surprise or prejudice? No, Your Honor, and first of all, prejudice is not a required showing when it's a substantive indictment. Courts analyze prejudice if it is a formal indictment, but not so when it's substantive. In this case, it's substantive because the grand jury never charged Mr. Jones with this aggravated battery to this victim. The prosecution never. That's the same, that was the same, the same was true in Ibovis Jones. However, again, the change here is that the grand jury, there is no evidence before the grand jury of the victim that was originally in the indictment of Jones, which is different here. I'm sorry, say that again? In other words, here, as Justice Hudson indicated, there was evidence before the grand jury of, indeed, a touching of both the officers, correct? That is correct. So there was notice that there had been a touching of Officer Gutierrez as well as a cut. That is correct, but this is not a notice argument. This is a due process argument because the state did not properly charge Mr. Jones with this offense. The Illinois Constitution in Section 111.2 lays out two specific ways which the state may initiate felony proceedings, and that's, of course, an indictment from a grand jury or an information with a preliminary hearing. In this case, the state wants to create a third way to bring about felony charges, and that is making a new charge out of an old charge on the morning of trial, and that's simply, again, not in the Constitution and not in the statutes. It would essentially render the grand jury nullity and write its protections out of the Constitution. What's the standard of review for this court in determining whether or not the trial court erred in granting the state's request to amend the indictment? It's an abuse of discretion standard. In this case, the trial court looked at the grand jury transcripts, reviewed. According to the grand jury transcript, the trial court determined that the grand jury was provided this information and intended to bring the indictment, so that makes it a formal defect under Jones. Or at least in terms of the abuse of discretion standard, how do we say that the trial court abused its discretion? Make that argument. The trial court abused its discretion because the two elements that are to determine if it's a formal indictment were met in this case. Again, materially altered the charge, and it cannot be determined that the grand jury intended this change. It is not the burden upon the defense to prove that the grand jury intended what was originally there. It's the burden on the state to show that this amendment to the charge is merely formal and that the grand jury really intended to indict as was reflected in the amended indictment. Let me see if I can call out the essence of your position. Your position appears to be, even though the defendant's attorney acknowledged to the trial court that the aggravated battery of Gutierrez was referred to in the testimony before the grand jury, even though the trial court offered to allow the defense a continuance, you're saying the fact that there was no surprise, there was no attempt to continue, and even though Gutierrez was specifically mentioned as having been battered in the transcript, the trial court erred in light of all of that. Yes, Your Honor. And again, there is no prejudice showing required. It is not... I understand that, but it strengthens the analysis. I mean, what was the trial court then supposed to do? The trial court, if it was going to offer continuance, it should have offered a continuance to the state and say, go back before the grand jury, return a proper amendment on this aggravated battery to this victim. The state never fulfilled its obligations in charging the defense with, again, this particular crime. How do you respond to the argument, logically, that if that happened and they come back a week later, aren't you sort of elevating form over substance? I mean, what changed here? The change is the state never properly charged this crime, and it is the state's responsibility to go through the means that are laid out both in the Constitution and in statutes for how to initiate felony proceedings. Well, the evidence wouldn't have been any different before the grand jury. So, again, I mean, just following up and I guess underscoring Justice Hudson's question, what would have been different? We don't know what the grand jury would have done. There's a reason that the grand jury is in the Constitution. Perhaps they would not have thought that it's worth the expense of initiating a felony proceeding in terms of time, money, resources, when the offense to Officer Gutierrez was only a three-second touch on his arm that led to no injury, not to mention the expense in terms of taxpayer dollars of incarcerating Mr. Jones for four and a half years based on, again, this momentary touch. But we don't know what the grand jury would have done because the grand jury never indicted him, or we don't know that they indicted him, on this charge. On this issue, didn't the Illinois Supreme Court say in People v. Jones where there's no hint of surprise or prejudice to the defendant and that's not shown allowance of such an amendment is not error? Again, that is correct, Your Honor, but that was determined after the Illinois Supreme Court determined that it was a formal amendment based on the fact that there was no evidence of the victim that was originally in the indictment. The only evidence was the victim as it was reflected in the amended indictment in Jones. So that is the case. When it is formal, then that prejudice showing and that prejudice analysis is engaged in. But here where the amendment is substantive, no prejudice is needed, and so we don't get to that question, which the Supreme Court addressed in Jones, as you're referring to. What would be the relief if we were to agree with you? It would be to reverse the conviction because Mr. Jones was never charged with this aggravated battery. Reverse it outright? Yes, Your Honor. And the state could not bring a new indictment? Your Honor, I believe there would be possible statute of limitations or mandatory joint or problems. I don't think that the court has to address that question today. Well, we do if we were to reverse the conviction. Is it an outright reversal or is it a remand for? It would be an outright reversal if the state chooses to bring charges, chooses to reindict Mr. Jones, then at that time I believe the issue would be right to question whether or not he could be reindicted on his charges. As you said, mandatory joinder protected him in any event, even if the state had gone to trial on the original charge as charged and realized their mistake in the trial, they could not have brought a new indictment because of the mandatory joinder problem, correct? That's right. Yes, Your Honor. And the amendment was made within the statute of limitations, correct? Yes, Your Honor. So where's the due process violation then? The due process violation is the fact that the grand jury never indicted Mr. Jones on his offense. He was never properly charged. That's kind of a circular argument. I want to bring you back to where can it be shown that the defendant's right to due process was violated? His right to due process was violated because due process includes properly bringing the charge, and the charge, again, was never properly brought, which, Your Honor, I agree. But it goes back to the question, was it a substantive amendment to the indictment? And in this case, it was because of the two factors that I discussed earlier. And, in fact, without being properly charged, this conviction cannot be upheld on appeal. Counsel, looking at Ross, doesn't Ross say here, citing Jones, the court noted that it was permissible to revise the indictment, change the name of the victim, and it found the amendment to be formal? And you're arguing here this is technical. It's not formal. In Ross, didn't they hold changing the name of the victim along with the change in the type of sexual contact was formal? Your Honor, in that case, like Jones, goes to the second step of the analysis, which is whether or not the grand jury intended this change. The trial court in Ross specifically said that looking at the grand jury transcripts, the name of the victim was clear, and so, again, as in Jones, this case is differentiated based on that second step of the analysis. Well, maybe a slender read because I see what you're saying, and yet again, the transcript, Gutierrez was referred to as having been touched by the defendant. You don't dispute that? I don't dispute that. But, again, it's not the defendant's burden. It's the state's burden to show this would be different. In this case, it would be different if Officer Gutierrez was the only officer on the scene that night. But because there's multiple officers and because the grand jury heard testimony of the defense touching Officer Acas, this changes. It cannot be said that this is a mere – that this is an obvious scrivener's error and that clearly the grand jurors really meant Gutierrez. We don't know what they meant. They might have thought it was Officer Acas. They might have thought the simple touch on the arm, that can't be what the state's proceeding on an aggravated battery on. So we simply don't know, and it can't be dismissed as just a mere technicality or, again, just a scrivener's error. Why don't we move to the other issue of ineffective assistance of counsel given our time constraints? Your Honor, in this case, there is two instances of deficient performance. First, the attorney failed to strike a juror who expressed poor police bias, and second, the attorney failed to call Amanda Perkins in his case in chief. When you're talking about Juror Glees, aren't you really taking Juror Glees' comments out of context? Didn't Juror Glees really add that they would – I can't remember if it's a man or a woman – he or she would listen and make the effort to listen through the trial and then make the determination of credibility of a police officer? Yes, I'll agree there's a few sort of statements that would tend to support his credibility, but his last word is that he would find the police officers more believable. But we have to take the statement as a whole. We can't just take one line out of context in the whole colloquy between the judge and the juror, right? I believe taking the statement as a whole and how Mr. Glees responds, despite these few statements that perhaps he would listen and perhaps he would be fair, he kind of couched those in terms of I think and I might. His final statement again is I would believe the officers – or I would think the officers were more believable. And taking it as a whole, it seems that he is biased against the defendant. Now, even if this doesn't raise the level of a challenge for cause, at least the attorney should have engaged – used one of his preemptory challenges, of which he used none at that point, to strike Mr. Glees. And further on that point, it just simply appears that it was an oversight by counsel and not any type of reasoned out trial strategy given that once – right after he finishes questioning Mr. Glees, he says to the judge we challenge for cause. Judge Sheldon then began questioning another juror on that panel and then struck her for cause, after which a replacement juror was called and after which counsel questioned and everyone seems to sort of forget about Juror Glees and not know – not say anything else about him. So it appears to be a mistake of law on that point. All right. You'll have the opportunity to complete your argument. Thank you, Your Honor. Mr. Stephens. Good morning. Good morning, Your Honors. Okay. As to the first issue, I was – when I was reviewing this yesterday, I was hoping that I would come up with a nice, tidy summary of the law and I could give you some nice, bright, clear – Some pearls of nuggets that would obviously tip the scales here. Exactly. You know, bright-lining rules. Mr. Stephens, one of the problems in this case is that – you read the briefs for the first time yesterday? Reviewing it, getting ready for argument today? Well, you know, obviously I'm familiar with it. Exactly. But prosecutors generally also write the indictment, prepare the indictment for the grand jury and presumably read the police reports before they call witnesses before the grand jury. And had they done that correctly in this case, we wouldn't have this problem, correct? I would agree with that. This isn't what I would – Who should shoulder the burden for that kind of malpractice? The defendant? The cases say what they say. I'm not going to say that this is a good way to do it. Two years. I'll point to – Two years it took. Excuse me? Two years to get this indictment correct. That's true. But how often are – once a thing is done, how often is it reviewed? I mean, it's not like in two years. It's picked up every time. I'll just refer to Ross again. That was a case where essentially I would say the same sort of thing happened. There was a mistake. You know, somebody dropped the ball. It should have been done. It wasn't done. Their question is who should be held to account? Maybe the prosecutor. Your partner makes this point. He's saying, okay, but in Ross there was only one victim. The victim was misidentified. So it was akin to a scrivener's error. What he seems to be saying here is that wasn't the case. If you have potentially multiple victims and the grand jury has testimony, maybe they could have used discretion and decided there was probable cause on some. Officer Aik had that two years. He's saying Ross isn't really on all fours with the situation because you're going to say, well, the grand jury chose to indict and there's only one possible victim. There was nobody else they could have sought to charge. There's not multiple victims here. He's saying there's multiple potential victims. And so does Ross really apply? Yeah, I understand. What the defense really trying to do is thread the needle. I mean, clearly, Jones, all the other cases that were discussed, just previously indicate that you can change names. You can change the names of drugs. The only bright line rule really that I saw was that you can't charge a different, more serious crime and you can't increase the punishment. That's about the only bright line rule. So what the defendant is saying is, well, in those cases, we knew it was a mistake and that because there were no other possibilities, then that's that. So I would point to your Honor's Alston opinion. In that one, it was a UUW and in the fact situation, the defendant was found in the backseat of a car with another person. There was a gun in between and then there was also a gun found in the front seat. And if you read that case, Judge Rapp found that it was all right to add the phrase on or about his person. And he said that it was clear that the state always intended to charge the two guns. This is the latter part of Alston. I think that the answer to your question is, going back to Jones, is that, let's see. I have the exact language here, I believe. The liberalization of criminal pleading reflects a lessening of importance of the indictment's secondary functions. The indictment is a means of informing defendants of particulars concerning the case as far overshadowed by discovery. Similar to the time when it limits jeopardy has passed. The primary safeguard of the indictment by grand jury is to protect individuals from the caprice of the public prosecutor. Let me ask you this on that point. I asked counsel earlier to explain how there's a violation of due process here. When you talk about abuses by the prosecutor, the grand jury is to guard against the rubber stamping or abuses by the prosecutor, correct? That's what this says, the caprice of the public prosecutor. In the transcript of this grand jury, other than providing his name, the officer, all of his answers were simply, that's correct in responding to leading questions by the state. Doesn't that cut against your argument that in this case, the grand jury really didn't guard against any abuse by the prosecutor? They were just simply a rubber stamp. Well, I mean, this is an argument the defendant didn't make. I'm asking you. I'm not familiar with, honestly, I'm not familiar with any law that says particularly how the case is supposed to be presented. And, again, that kind of catches me a little off guard because the defendant didn't really argue it that way. I would have to go back, and if Your Honor's wish, I can file a supplemental. Well, there's certainly, they make the argument that there's a due process violation. And you, the state, relied upon the grand jury transcript in seeking the amendment. So it is part of the record in this case. And my question is, is that really, in this case, did the grand jury proceeding, the presentation, guard against abuse by the prosecutor? Yeah, I think it does. I mean, he did have to answer questions. I mean, yes, there are leading questions. But I think we know that the grand jury proceeding isn't a trial. It's simply to find whether there's reason to bring the cause. And I'd also point out that charges can be brought by a verified complaint, and there would be even less of this kind of verification that you're suggesting. Didn't this court in People v. Hunter send a message to prosecutors to guard against mistakes before a grand jury? For example, if there's false testimony provided? I'm not familiar with Hunter offhand. I mean, certainly the principal, I can't say. In Hunter, we reversed this court. I'm sorry? Reversed a conviction because of a presentation of false testimony before a grand jury. Again, we're another officer. False testimony is quite a different thing, though. There's nothing false here. Not false, but a mistake in the indictment. I would say that there's a considerable difference. I mean, when the prosecutor is actively pursuing false testimony, knowingly doing so, that's an insult to the system. I mean, I think that's apples and oranges, Judge, really. We have to take a look at Hunter because that was not the case. What happened in Hunter was that there was misleading testimony provided through an officer who was providing hearsay testimony. Nevertheless, despite the fact there was no intentional misconduct, the defense discovered the mistake, brought it to the attention of the trial court, the indictment was dismissed, and this court affirmed the dismissal. Right, but that would be a case where the prosecutor was so lacking in diligence, not checking his facts, that it would be the same thing as pursuing a false, actively pursuing false testimony, intentionally pursuing it. I mean, you know. And here it's a mistake. I'm sorry? And here it was just a simple mistake. Yes. Sloppy. Would you say it's sloppy? Sloppy, as in Ross? That was the word that Ross used. Okay. When the state does seek an amendment, do you think surprise or prejudice to the defendant is relevant to the analysis? They seem to think it wasn't. Yeah, that was a point I did want to get to. Thank you. I think it's a very central point. The defendant suggests that, oh, no, the prejudice never counts, I guess, but, again, it's mentioned over and over and over again. The judge here gave the defendant every opportunity to additional time to prepare, I think, his comments. If the defendant had made the argument he makes now, oh, no, I believe this should be reindicted, I can't guarantee, but it certainly seems like the judge would have at least entertained that as a suggestion, that, oh, no, we need to go back and reindict. In terms of the state of the law, I take it that you would have on earth no cases that are on all fours with this situation in the sense that the amendment related to the situation where there were multiple potential victims mentioned before the grand jury and then the amendment related to one of them. I mean, that seems to be the crux of the matter. I mean, you're saying you're splitting hairs, but we don't have a case exactly on point, do we? I would say Alston, I think, is the closest. But Alston, you said Anna Rabaul wasn't a victim. Yeah, but it was adding a way that the grand jury or that the crime could be charged. As I read Alston, it was on his person. The gun was essentially six inches from him. I guess that would be, you know, on. It seemed that Judge Rapp, in writing it, was saying that that was on, and that by adding or about, it included a gun that was in the front seat. So I think it's a parallel thing. It's not additional people that you could, you know, presume were there, but it is an additional, you know, way by which the charge could be brought. Well, how do you answer his point of question? Let's say you have a grand jury with multiple potential victims mentioned. How do we know the grand jury found probable cause specific to Gutierrez when they could have found it to somebody else? He says, how do we know what they were thinking? What if they actually thought they were indicting an Alston and didn't think the evidence was sufficient to establish probable cause? Let's assume that they, so you follow the logic of his argument. There's multiple potential victims. His argument is they may have intended to find probable cause with regard to the other officer and not Gutierrez. And now the prosecutor slips in Gutierrez. How do we know the grand jury concluded there was probable cause with regard to him? How do we know that? It's a good question, isn't it? Well, wasn't there an aggravated battery with regard to both of the victims here? Wasn't there evidence before the grand jury as to both? Oh, darn. I'm afraid I don't recall. My recollection is that there were three charges that there was an aggravated battery. Well, one was Nally Prost, right? The resisting was Nally Prost. And disarming the peace officer was ACOT. Yeah, disarming. Right? And the aggravated battery was to Gutierrez. But if you look at the actions as to ACOT, didn't that also amount to an aggravated battery? Certainly a touching when the gun was. . . I think it's kind of a stretch as it was presented. Because what you have is, as I recall, you have an aggravated battery, you have a disarming, and then you have the resisting peace officer, I believe, which that just goes out. You know, the jury. . . It was Nally Prost. Yeah, that was Nally Prost. So, I mean, you have an offense clearly against the person grabbing the arm of the officer. And then you have an offense which certainly suggests grabbing the gun. And the transcript reveals that the arm that was grabbed was the arm of Officer Gutierrez. That's what the grand jury transcript says. Yes. And again. . . The grand jury proceeding isn't to prove the case. And again, going back to Jones, a lot of these questions are, you know, solvable through reference to discovery. This is not to, you know, set the limits of, you know, later jeopardy. And it's mainly to keep the state from charging, well, anything. All right. Do you want to move to respond to counsel's argument with regard to Glees? He obviously thinks that counsel made a mistake or forgot to interpose an objection either for cause or exercise of peremptory with regard to Glees. Yes. Thank you. Just really quickly, please. Really quickly. As far as the mistake goes, one thing he points to is that there. . . Here. Juror Williams was questioned. I think, counsel, we know what happened. Do you want to directly respond to what counsel said? Was it a mistake? Did he forget? No, I think that's ridiculous. And wasn't Glees biased by his comment? No, because he said, I would try to be. . . I think he was just trying to be a very honest guy. He was trying to tell from his heart. He wasn't giving a rote answer. No, I will always be fair in all things and in all ways and at all times and places. He was considering what defense counsel was asking. And in that regard, I want to refer to the Gonzales case. It's not really on point, except for the fact that it shows that there's an interaction between counsel and their foreign dearing. That's part of the art of trial is picking somebody who you think is going to understand your argument, that you think is on board. In every respect, other respect, defense counsel is certainly competent in his representation and is very good as an attorney. I think you can't really say on the basis of picking outlines, well, I would think. . . Wood is very conditional. I would try to. He's an honest guy, and I think you have to respect defense counsel's take on that. What about failure to call the girlfriend in rebuttal? I think that was clearly strategic. I would point out and I would stress that, yeah, he did say in the opening argument, we're going to call Amanda. But then, after he saw that the state may have had some weakness on establishing the insulting nature of the contact with Gutierrez, and the judge asked, are there any more witnesses, he stopped, said, let me talk to defendant. And then he decided it. It happened that the state did catch that and repaired it. Would she have added very much? I don't think so. And I think that would be a logical strategic decision for the defense to make. Couldn't she have corroborated the defendant's testimony that he did not grab Gutierrez's arm? I don't know. We don't know. She didn't testify. There may have been some good points and bad points, and that could well have figured into the strategy. According to the officers, didn't the officers testify that she was present, at least they could see her? Yeah, she was present, and I believe somewhat behind the action. She was deeper into the room. They couldn't see her, and that was part of the reason why they were persisting. It's like, well, is she really okay, which is another point. We don't know because she didn't testify, and she may have been damaging to the defendant's case. It's entirely possible. It could have been, you know, I mean, he was intending to call her in the first place. It may have been, you know, the weakness that he perceived in the state's case tipped the balance. He said, well, we'll take it. So you think it may have been strategy? I'm sorry? It may have been trial strategy. Exactly. Okay. Thank you. Thank you for the extra time. Mr. McCoy? To respond to counsel's point about people being Alston, it's important to remember that in Alston, the issue as to the amendment had been waived in that case, where in this case it was preserved. Also, as Justice Hudson pointed out, it is a different factual scenario. It's not a different victim, which in this case changed, made it a different battery. It's the same gun. It's just where the gun was located. In terms of the grand jury transcript and the counts in the indictment, there were three counts. All of them referred to Officer Akat, including the resisting count, which specifically alleged that the defendant struck Officer Akat. So clearly the grand jury thought that there was an aggravated battery to Akat. In reading the transcripts, even after the touching of his belt, there is some statements that the defendant continued to fight with all of the officers and continued to struggle with all of the officers. So the grand jury may have believed that that as well contributed to the aggravated battery against Akat and creates more uncertainty as to what the grand jury actually intended. If you look at the language in the aggravated battery count, it only references bodily conduct of the insulting or provoking nature. There's no specifics as to what this bodily conduct was that would make it any more likely that it was Akat, or that it was Gutierrez as opposed to Akat. Let me ask this question. Here's a question on page 813 of the brief. At that point, Jones reached out and grabbed a hold of Officer Gutierrez's arm and told the officer, the officer told Jones not to grab him and that he was under arrest at that point. Is that correct? That's correct. So there clearly was testimony before the grand jury on the allegation of grabbing the arm that the defendant was trying on, correct? Yeah, and I don't dispute that in any way. But the fact is because there's other officers and because there's other touching, it can be said that this is, again, just a scrivener's error or miswriting. It is a substantive amendment, and this isn't splitting hairs in this case. It's equivalent to a structural error, how the entire charge and how the entire case has been brought before the trial court. Again, there's two ways to bring a charge, and neither of those ways were followed by the state in this case. I don't believe the offer of a continuance cured these errors because it's not up to the defense to tell the state how to properly bring these charges. And finally, on the ineffective assistance counsel point, my only comment would be, yes, perhaps Glees gave honest answers, but they were honestly biased against the defendant. And because of that, counsel, again, should have used a challenge for cause or a preemptory challenge. And in all other respects, we would rest on our brief. In conclusion, we ask that this court reverse Mr. Jones's conviction for aggravated battery or alternatively reverse and remand based on ineffective assistance counsel. Thank you, Your Honor. Thank you very much. Thank you, counsel. The court will take the matter under advisement and render a decision in due course. We stand in recess until the next case.